## REFELD VS. FERRELL.

VENDOR'S LIEN: *Exists only as to purchase money.*
A vendor of real estate has no lien thereon for indebtedness of the vendee arising from other transactions.

APPEAL from *Arkansas* Circuit Court.

Hon. P. C. DOOLEY, Circuit Judge.

*Cockrill* for appellant.

The appellant has a lien by force of the former decision of this court in this case. See same case in 27 Ark., 538. The case here will be determined by the evidence, without following the finding of the chancellor. *Ringgold* v. *Patterson*, 15 Ark., 209.

*Dodge & Johnson* for appellee.

Rest also upon the decision in *Refeld* v. *Ferrell*, 27 Ark., 534.

HARRISON, J.:

Joseph M. Refeld sued Leroy Ferrell to recover possession of a lot of ground in the town of Arkansas Post.

*Vol. xxx.—30.*

The defendant, in his answer, claimed that the plaintiff, in the year 1866, sold the lot to one W. R. Watkins for $100 on a credit. That Watkins took possession and made improvements on the lot to the value of $1500, and on the 11th day of July, 1867, he sold the same to the defendant, who paid him for it, and transferred to him the possession. That after his purchase the defendant tendered the plaintiff the sum Watkins was owing him for the lot, and demanded a deed, but he refused to accept the money or make the deed. He, again, in his answer, tendered the money with the interest thereon, and brought the same into court. He made his answer a cross complaint, and prayed that the plaintiff might be decreed to make him a deed for the lot, and on his motion the case was transferred to the equity side of the court.

The plaintiff filed a replication to the cross complaint. He admitted the sale of the lot to Watkins, but denied that the $100 was the consideration therefor. Watkins, he alleged, was at the time indebted to him in the sum of $1700 or $1800, and in addition to the $100 he promised, in consideration of the purchase, to pay that indebtedness also, and that it was distinctly understood and agreed between them, that a deed was not to be made until he paid not only the $100, but his other indebtedness besides, which fact the defendant well knew when he purchased from Watkins, and that no part of the said purchase money or consideration had been paid.

The defendant demurred to the plaintiff's answer on the ground that it did not state facts sufficient to constitute a defense to his cross complaint. The court sustained the demurrer and rendered a decree that the plaintiff, on being paid the sum of $100, make the defendant a deed for the lot, and that he pay the cost of suit.

From that decree the plaintiff appealed to this court.

This court held the plaintiff's answer sufficient, and reversed the decree and remanded the case for further proceedings.

Upon the return of the case to the court below it was heard upon the pleadings and depositions, and the court decreed that, upon payment being made by the defendant of the said sum of $100, the said purchase money, with interest from the 12th day of October, 1866, until the said 25th day of April, 1871, and the costs which had accrued up to that day, which were declared to be a lien on the lots, the plaintiff should make the defendant a deed for the lot, and he was adjudged to pay all other costs.

The plaintiff again appealed.

The only question now for consideration is whether the decree is in accordance with the evidence and pleadings, all others that might be raised having been directly or virtually settled when the case was here before.

R. W. Watkins testified for the plaintiff that he purchased the lot from the plaintiff in the fall of 1866, and was to pay $100 for it. He was at the time otherwise indebted to the plaintiff, but in what amount he did not know, but there was no understanding between them that the plaintiff should have a lien on the lot for what he owed him besides the purchase money. He received no deed, and had not intended to ask for one until he had fully settled with the plaintiff. He had, however, never supposed that the plaintiff had a lien on the lot for anything more than the purchase money. After he purchased he took possession of the lot and built a storehouse on it. He afterwards sold the lot to defendant, who was to pay plaintiff, as part of the consideration, what witness owed him for the lot, the remainder of the price he paid witness. He was, when he sold to the defendant, solvent and could have paid plaintiff for the lot.

The plaintiff himself testified that he sold the lot to Watkins for $100, but gave no deed or title bond; that Watkins, at the

time, was in debt to him $1,700 that was still unpaid, and he did not expect to make him a deed until the whole of his indebtedness was paid, and it was his impression that he was not to have a deed until then, and such he thought was the understanding between himself and Watkins; there was, however, no express agreement or understanding that the improvement Watkins put upon the land was to be a security for the $1,700 debt. He asked Watkins, about the time of the purchase, if he expected a deed before the whole of his indebtedness was paid, and he said he did not. The lot had never been paid for, and no tender of the money was made before the commencement of the suit.

The defendant testified that he purchased the lot from Watkins in July, 1867, and at the time knew nothing about any other lien or incumbrance, except for the $100 purchase money, and that he agreed to pay to the plaintiff. He gave $1,500 for the property, all of which he paid except the $100. He occupied the lot and sold goods in the storehouse from the time of his purchase until sometime in 1869, and still held possession of it. Sometime in 1868 he applied to the plaintiff for a deed, and offered to pay him, what Watkins owed him for the lot, but he refused to make the deed unless he would pay Watkins' other indebtedness, which was the first he ever heard of any other claim on the property except the lien for the $100. Watkins was, when he purchased from him, solvent, but was then in failing circumstances. Some four or six months afterwards, in 1869, in a conversation with the plaintiff about the property, he asked him if Watkins gave him a lien on the lot for the $1,700 debt, and he replied "no," but he "intended to hold it for it." He tendered the plaintiff the money for the lot, again, on the 25th day of April, 1871, after the commencement of the suit, but on the day the writ was served.

The evidence sustains every allegation of the defendant's cross complaint, and there is no proof whatever, that the plaintiff

had any lien on the property except that for the purchase money due from Watkins, and the defendant appears clearly entitled, upon the payment of that, to a deed for the lot as decreed by the court.

The decree is accordingly affirmed.